**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Tolano, et al., | No. CV-18-00125-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| El Rio Bakery, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' "Motion to Court for Entry of Default Judgment and Request for Monetary Relief" as to Defendants El Rio Bakery and Carlos Guillermo Vargas Mendoza. (Docs. 29, 30.) For the reasons explained below, the Court will grant Plaintiffs' Motion and award the requested relief.

**I.   Background**

Plaintiffs filed a Complaint on March 7, 2018 (Doc. 1) and the operative Amended Complaint on June 24, 2018 (Doc. 12). Plaintiffs allege that Defendants El Rio Bakery and its owner, Defendant Carlos Guillermo Vargas Mendoza, failed to pay Plaintiffs for all hours worked, failed to pay overtime, and retaliated against Plaintiffs after they complained. (Doc. 12.) Plaintiffs raise claims for overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); failure to pay the minimum wage in compliance with the Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-362, *et. seq.*; failure to make timely wage payments under the Arizona Wage Act ("AWA"), A.R.S. § 23-351; retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3); retaliation in violation

of the AMWA, A.R.S. § 23-364(B); and common law unjust enrichment. (*Id.*) Service was executed upon Defendants El Rio Bakery and Vargas Mendoza on August 28, 2018. (Docs. 15, 16.)

Neither Defendant filed an Answer to Plaintiff's Amended Complaint. (Doc. 12.) On September 14, 2018, Defendant Vargas Mendoza gave notice via counsel that he had filed a Chapter 13 Bankruptcy Petition. (Doc. 17.) The Court ordered briefing as to whether the automatic stay provision of 11 U.S.C. § 362 applied to Defendants in light of the pending bankruptcy petition. (Doc. 18.) Both parties agreed that the stay provision applied only to Defendant Vargas Mendoza, the debtor in the bankruptcy petition, and not to Defendant El Rio Bakery. (Docs. 19, 20.) On December 17, 2018, the Court provided Defendant El Rio Bakery an extension of time to file its Answer, but no Answer was filed. (Doc. 21.)

On January 2, 2019, Plaintiffs requested entry of default against Defendant El Rio Bakery pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 22.) Default was entered as to Defendant El Rio Bakery by the Clerk of Court on that same day. (Doc. 23.) On February 19, 2019, the Bankruptcy Court dismissed Defendant Vargas Mendoza's Chapter 13 Petition, thus lifting the automatic stay pursuant to 11 U.S.C. § 362(c)(2)(B). (Doc. 26.) Default was then entered as to Defendant Vargas Mendoza after he failed to timely file an Answer. (Docs. 26, 27.) On April 4, 2019, Plaintiffs moved for entry of default judgments against both Defendant El Rio Bakery and Defendant Vargas Mendoza. (Docs. 29, 30.)

On August 20, 2019, the Court ordered that Defendants show cause as to why default judgment should not be entered against them. (Doc. 32.) The Court also provided Plaintiffs an opportunity to submit additional evidence and argument on the issue of damages. (*Id.*) Plaintiffs submitted additional evidence and argument. (Doc. 36.) Defendants did not respond to the Court's Order to Show Cause.

**II.     Default Judgment Standard**

Once a party's default has been entered, the district court may grant default

judgment against that party. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. *Aldabe,* 616 F.2d at 1092. Rather, a court has discretion whether to grant or deny relief. *Id.* The Ninth Circuit has identified several factors, discussed below, which a court should consider in adjudicating a motion for default judgment. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**III.    Jurisdiction**

As Defendants have failed to appear in this action, the Court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties" before granting entry of default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Both subject matter and personal jurisdiction are proper in this case.

This Court has original federal question jurisdiction over Plaintiffs' FLSA claims. 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiffs' claims arising under Arizona law because those claims are so substantially related to Plaintiffs' FLSA claims that they form part of the same "case or controversy." 28 U.S.C. § 1367(a).

This Court also has jurisdiction over the parties. Defendants Vargas Mendoza and El Rio Bakery were residents of Tucson, Arizona when the events complained of occurred and this action was filed. (Doc. 12 ¶¶ 16-20.) Defendants conducted business in Arizona, and this case concerns their alleged failure to comply with various employment statutes as applied to their Arizona employees. (*Id.*) Personal service was properly executed against Defendants on August 28, 2019. (Docs. 15, 16.)

Accordingly, the Court finds that it has jurisdiction over the subject matter and the parties.

**IV.    The *Eitel* Factors Counsel in Favor of the Entry of Default**

In *Eitel,* the Ninth Circuit laid out seven factors that may be considered by courts exercising discretion as to the entry of a default judgment:

>    (1)  the possibility of prejudice to the plaintiff;
>    (2)  the merits of plaintiff's substantive claim;

      (3)  the sufficiency of the complaint;

      (4)  the sum of money at stake in the action;

      (5)  the possibility of a dispute concerning material facts;

      (6)  whether the default was due to excusable neglect; and

      (7)  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits

782 F.2d at 1471-72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The Court will discuss each factor in turn.

    A.    <u>Possibility of Prejudice to the Plaintiff</u>

Plaintiffs served Defendants with their Amended Complaint in August 2018. (Docs. 15, 16.) Defendants have failed to answer. In the absence of a default judgment, Plaintiffs will "likely be without other recourse for recovery." *Young Poong USA Corporation v. Young Poong Paper Mfg Co.*, No. CV-17-02434-PHX-DMF, 2018 WL 4177942, at *4 (D. Ariz. July 3, 2018) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans.,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The possibility of prejudice to plaintiffs therefore weighs in favor of the entry of default judgment.

    B.    <u>Merits and Sufficiency of Complaint</u>

Plaintiffs seek damages on their claims for overtime violations under the FLSA, failure to pay the minimum wage in compliance with the AMWA, and retaliation in violation of the FLSA and AMWA. The Court addresses each claim below.[1]

        *i.*    *Overtime Violations Under the Fair Labor Standards Act*

The overtime provisions of the FLSA provide that employers must pay one and one-half the regular hourly rate of compensation for hours worked beyond a regular forty-hour workweek. 29 U.S.C. § 207(a)(1). To state a plausible claim of an overtime violation under FLSA, a plaintiff must do more than "present[] generalized allegations asserting

---

[1] Although Plaintiffs' Amended Complaint asserts claims for failure to make timely wage payments under the AWA and common law unjust enrichment, Plaintiffs do not seek damages with respect to those claims, and thus the Court need not consider those claims further.

violations" of the overtime provisions. *Landers v. Quality Commc'ns, Inc.* 771, F.3d 638, 646 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1845 (2015). Rather, under the post-*Twombly* and *Iqbal* standard, a plaintiff must plead specific factual allegations "that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* Here, Plaintiffs' complaint meets this burden because each Plaintiff specifies at least one week in which he or she worked a specific number of overtime hours but was not paid the overtime rate mandated by FLSA. (Doc. 12 ¶¶ 27, 30, 33, 38.) The Court is therefore satisfied that Plaintiffs' complaint states a claim for violations of the overtime provisions of FLSA.

### ii. Minimum Wage Violations Under Arizona Law

The AMWA requires that employers pay employees a certain hourly wage. A.R.S. § 23-363. As penalty for failing to pay at least the appropriate minimum wage, the AMWA provides for recovery of not only the unpaid wage but also "an additional amount equal to twice the underpaid wages." *Id.* at 364. Plaintiffs allege with specificity that Defendants consistently failed to pay the minimum wage as to each Plaintiff. (Doc. 12 ¶¶ 22-25 as to Plaintiff Bernal, ¶ 28 as to Plaintiff Mendoza, ¶ 31 as to Plaintiff Herrera, ¶¶ 35-36 as to Plaintiff Tolano). Plaintiffs allege the amount per hour required to be paid by the minimum wage statute, the amount per hour actually paid, and the time periods in which the violations occurred. *Id.*

Taking the factual allegations in the complaint as true, *TeleVideo Sys. v. Heidenthal, Inc.,* 826 F.2d 915, 917-918 (9th Cir. 1987) (per curiam), the Court finds that Plaintiffs' Amended Complaint (Doc. 12) contains sufficient factual information to make out a plausible claim for relief under the AMWA.

### iii. Retaliation Under State and Federal Law

Both FLSA and AMWA provide causes of action for retaliation for employees who suffer adverse employment action because they assert statutory rights. 29 U.S.C. § 215(a)(3); A.R.S. § 23-364. The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint

or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding[.]" *Id*. The AMWA provides that it is unlawful for anyone to "discriminate or subject any person to retaliation for asserting any claim or right under this article, for assisting any other person in doing so, or for informing any person about their rights." A.R.S. § 23-364(B). Adverse action within ninety days of participation in protected activities raises a rebuttable presumption that the adverse action was retaliatory in nature. *Id.*

The same factual allegations are relevant to Plaintiffs' retaliation claims under both FLSA and AMWA. With regard to Plaintiff Herrera, the Amended Complaint alleges that Plaintiff Herrera invited other employees to attend an upcoming meeting at the Workers' Rights Clinic to take place on September 22, 2017. (Doc. 12 ¶ 42.) The Amended Complaint further alleges that immediately after that meeting Defendants refused to schedule Plaintiff Herrera for work and soon after replaced her with a new employee. (*Id.* ¶¶ 43-45.) With regard to Plaintiff Tolano, Plaintiffs allege that Federal Express delivered a letter from the Workers' Rights Clinic on or about February 16, 2018, demanding that Defendants remedy their wage and hour violations with respect to all four Plaintiffs, who were named in the letter. (*Id.* at ¶ 49.) Two days later, Plaintiff Tolano was fired, despite having not received any negative feedback about her work over the past five years. (*Id.* ¶¶ 50-51.)

Finally, with regard to Plaintiffs Bernal and Mendoza, Plaintiff's Amended Complaint alleges that within days of the delivery of the demand letter via Federal Express, Defendants instructed Plaintiffs Bernal and Mendoza to fill out employment applications even though they had each been working for Defendants for at least two years. (*Id.* ¶¶ 52, 58.) Afterwards, Defendants cut Plaintiffs Bernal and Mendoza's hours drastically, assigning Plaintiff Bernal only two days of work per week and Plaintiff Mendoza only 18-20 hours per week. (*Id.* ¶¶ 54, 60.)

Retaliation claims under FLSA are governed by the three-step burden shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See*

*Forsyth v. City of Buena Park*, 691 Fed. App'x 363 (9th Cir. 2017). Thus, "a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (summarizing *McDonnell Douglas* framework).

All four plaintiffs were engaged in "protected activity known to the defendant." *Mullins,* 626 F.3d at 53. Such activity is not limited to the filing of a formal complaint. *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011). Rather, a complaint falls within the scope of the antiretaliation provision if it is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id*. Here, the Amended Complaint alleges that Plaintiff Herrera complained to Defendant Vargas Mendoza on May 15, 2017, "and on several occasions thereafter," that he was not paying her the minimum wage. (Doc. 12 ¶ 39.) She then organized a meeting with the Workers' Rights Clinic and encouraged her fellow employees to attend. (*Id.* ¶¶ 41-43.) Either her oral complaints or the organizing of a meeting with a Workers Rights organization would, standing alone, be understood by a reasonable employer as "an assertion of rights and a call for their protection." *Kasten,* 563 U.S. at 14.

Plaintiffs Tolano, Bernal, and Mendoza were each allegedly subjected to adverse action immediately after being named in a letter authored by the Workers' Rights Clinic addressing Defendants' violations of wage and hour statutes. (Doc. 12 ¶¶ 50, 52, 58.) A formal letter sent by a legal representative is clearly sufficient to manifest the required "assertion of rights and [] call for their protection." *Kasten*, 563 U.S. at 14. Therefore, all plaintiffs can demonstrate they were engaged in the "protected activity known to the defendant" required to prevail on a FLSA retaliation claim. *Mullins,* 626 F.3d at 53.

Plaintiffs also each suffered "an employment action disadvantaging [them]." *Id.*

According to the Amended Complaint, Defendants refused to schedule Plaintiff Herrera for work, discharged Plaintiff Tolano, and forced Plaintiffs Bernal and Mendoza to fill out employment applications and drastically cut their hours. (Doc. 12 ¶¶ 45, 50, 52-54, 58-60.) This caused Plaintiffs Bernal and Mendoza's "working conditions [to] become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *See Pennsylvania State Police v. Suders,* 542 U.S. 129, 141 (2004).

Finally, the Court is persuaded that Plaintiffs have alleged sufficient factual allegations to make out a plausible case for the requisite "causal connection" between the protected activity and adverse action. *Mullins,* 626 F.3d at 53. Plaintiffs may prove causation by showing that retaliation was a substantial or motivating factor for a defendant's adverse employment actions. *Ostad v. Or. Health Scis. Univ.* 372 F.3d 876, 884 (9th Cir. 2003). Plaintiffs can satisfy this standard in a variety of ways, including by showing temporal proximity between the protected activity and the adverse action, through statements by the employer showing its disapproval of the protected activity, or by showing that the employer's proffered reasons for the adverse action were pretextual. *Coszalter v. City of Salem,* 320 F.3d 968, 977 (9th Cir. 2003).

Here, Plaintiffs allege that adverse action occurred almost immediately following protected activity. In the case of Plaintiff Herrera, she was taken off the schedule "[i]mmediately after the September 22 meeting" that she organized. (Doc. 12 ¶45.) In the case of the other Plaintiffs, they suffered adverse action within days of the delivery by Federal Express of the demand letter from the Workers' Rights Clinic. (*Id.* ¶¶ 50, 52, 58.) The Court is persuaded that the temporal proximity alleged between Plaintiffs' protected activity and the apparently adverse action is sufficient to state a prima facie claim. *See Thomas v. City of Beaverton,* 379 F.3d 802, 812 (9th Cir. 2004) ("The Causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two.") (internal quotation marks and citation omitted).

Like FLSA, AMWA's retaliation provision prohibits employers from taking

- 8 -

retaliatory actions against employees. A.R.S. § 23-364(G). Adverse action taken within 90 days of a person's assertion of their rights raises a rebuttable presumption that such action was retaliatory. A.R.S. § 23-364(B). An employer can rebut that presumption by presenting clear and convincing evidence that the adverse action was taken for permissible reasons. *Id.* Here, the presumption has been raised as to each Plaintiff and has not been rebutted. Accordingly, the Court finds that Plaintiffs have adequately stated a claim for retaliation under both statutes.

### C. Sum of Money at Stake in the Action

Plaintiffs seek monetary relief in the total amount of $197,078 for all four Plaintiffs. Plaintiffs allege that Defendants consistently failed to adhere to federal and state wage and hour laws over a period of years. Defendants then discharged or constructively discharged Plaintiffs when they complained or otherwise sought to vindicate their statutory rights.

Defendants' retaliatory actions are probative of intentional misconduct; this is not a case of minor accidental or technical statutory violations made in good faith. *See, e.g., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003), *cert. denied*, 541 U.S. 1030 (2004) (finding denial of liquidated damages for overtime violations warranted where the defendant has shown good faith and had an objectively reasonable basis for believing it was complying with the law). Rather, the facts alleged suggest a pattern and practice of purposeful violations of wage and hour laws undertaken for the purpose of financially benefitting Defendants.

Moreover, the amount of the damages Plaintiffs seek are set by statute. The FLSA provides for double damages for overtime violations. 29 U.S.C. § 216(b). The AMWA provides for treble damages for minimum wage and wage payment violations. 23 A.R.S. § 23-364(G). Accordingly, the Court finds that the sum of money at stake in the action weighs in favor of entry of default judgment.

### D. Possibility of a Dispute Concerning Material Facts

Where a complaint states a cause of action and the defendant, although properly served, fails to raise any issue of fact by responding to the allegations, courts will find that

this factor favors granting a default judgment as to liability. *See Stillwater Ins. Co. v. Fricker*, No. CV-17-1080-PHX-DGC, 2018 WL 2985255 at *3 (D. Ariz. June 14, 2018). If a genuine dispute over material facts existed, it is likely that Defendants would have raised such a dispute in response to this action. Therefore, this factor weighs in favor of a default judgment.

### E. Whether Default Was Due to Excusable Neglect

It is clear that Defendants were aware of this proceeding because they provided notice through counsel of Defendant Vargas' bankruptcy petition. (Doc. 17.) Defendants' failure to address the substantive issues raised therefore appears willful and deliberate. There is no indication that Defendants' failure to appear and defend this action was anything other than purposeful. Accordingly, this factor weighs in favor of a default judgment.

### F. Federal Rules' Policy Favoring Decisions on the Merits

Cases should be decided upon their merits whenever reasonably possible. *Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985). This factor cautions hesitation in the granting of a default judgment. However, here the Court has provided multiple opportunities for Defendants to appear and defend themselves, and Defendants have repeatedly declined those opportunities. Accordingly, a decision on the merits will not be possible. While mindful of the Federal Rules' policy favoring decisions on the merits, the Court finds that this factor does not outweigh the other *Eitel* factors discussed above.

## V. Damages

In contrast to other allegations in the Complaint, allegations pertaining to damages are not taken as true. *See TeleVideo Sys., Inc. v. Heidenhal*, 826 F.2d 915, 917-18 (9th Cir. 1987). As a result, a "[p]laintiff is required to prove all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." Fed.

R. Civ. P. 54(c); *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). "In determining damages, a court can rely on declarations submitted by the plaintiff[.]" *Philip Morris USA, Inc.*, 219 F.R.D. at 498.

Plaintiffs request double damages for overtime violations as provided by the FLSA, 29 U.S.C. § 216(b). (Doc. 31 at 4.) They also request treble damages for minimum wage violations under the AMWA, A.R.S. § 23-364(G). (*Id.* at 4-5.) They further request $150 in damages for retaliation under the AMWA, A.R.S. § 23-364(G), to be paid for each day between Plaintiff's alleged termination or constructive discharge and October 4, 2018, the date El Rio ceased operations. (*Id.* at 5.)

Plaintiff Tolano requests damages in the amount of $52,171, comprised of $6,190 in base wages and liquidated damages for overtime violations under the FLSA, $11,781 in treble damages for minimum wage violations under the AMWA, and $34,200 as remedy for retaliation under AMWA. (*Id.* at 7.)

Plaintiff Bernal requests damages in the amount of $51,925, comprised of $7,780 in base wages and liquidated damages for overtime violations under the FLSA, $23,295 in treble damages for minimum wage violations under the AMWA, and $20,850 as remedy for retaliation under AMWA. (*Id.* at 10.)

Plaintiff Mendoza requests damages in the amount of $30,106, comprised of $6,976 in base wages and liquidated damages for overtime violations under the FLSA, $4,680 in treble damages for minimum wage violations under the AMWA, and $18,450 as remedy for retaliation under the AMWA. (*Id.* at 11.)

Plaintiff Herrera requests damages in the amount of $62,876, comprised of $410 in base wages and liquidated damages for overtime violations under the FLSA, $5,916 in treble damages for minimum wage violations under the AMWA, and $56,550 as remedy for retaliation under the AMWA. (*Id.* at 12-13.)

A. <u>Damages for Overtime Violations under the FLSA</u>

Plaintiffs request double damages for overtime violations as provided by the FLSA, 29 U.S.C. § 216(b). (Doc. 31 ¶ 10.) The affidavit of Plaintiffs' counsel contains detailed

and specific calculations as to the claimed damages for overtime violations under the FLSA. (Doc. 31 at 25-55.) The affidavit specifies the amount paid for each relevant period and the estimated hours of overtime worked during each week of the relevant period. The affidavit accurately calculates Plaintiffs' damages for the overtime violations. The Court finds that the requested overtime damages are reasonable as to each Plaintiff and are adequately supported by cognizable evidence.

### B. Damages for Minimum Wage Payments under the AMWA

Plaintiffs also seek statutory treble damages under the AMWA for Defendants' failure to pay the minimum wage. (Doc. 31 at 4-5.) The affidavit contains detailed and specific calculations as to these claimed violations. (*Id*. at 25-55) The affidavit shows an estimated number of hours worked for each week during the relevant period, the minimum wage at that time, and the amount actually paid. (*Id.*) The affidavit accurately calculates Plaintiffs' damages for the minimum wage violations. The Court finds that the requested damages are reasonable as to each Plaintiff and are adequately supported by cognizable evidence.

### C. Damages for Retaliation under the AMWA

Plaintiffs also request $150 in statutory damages for retaliation under the AMWA, A.R.S. § 23-364(G), for each day between their discharge or constructive discharge and when El Rio ceased operations on October 4, 2018. (Doc. 31 at 5.) The AMWA provides for statutory damages for unlawful employment retaliation in an amount "sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued until legal judgment is final." A.R.S. 23-364(G).

The Court previously noted that remedies for employment retaliation generally require an employee to mitigate their damages by attempting to secure comparable employment. (Doc. 32.) At the Court's invitation, Plaintiffs submitted affidavits describing the extent to which they mitigated their damages by seeking comparable employment. (Docs. 36-1, 36-2, 36-3, 36-4.) Each Plaintiff explained that they either found comparable

employment or have been diligently attempting to do so. (*Id.*) Plaintiffs also submitted additional argument that A.R.S. § 23-364(G) sets a "floor" on retaliation damages and that mitigation of damages is not required. (Doc. 36 at 6-14.)

The Court finds Plaintiffs' arguments persuasive. In particular, the plain language of A.R.S. § 23-364(G)'s minimum daily retaliation provision differs pointedly from the requirements set up under analogous statutes like the FLSA and Title VII, 42 U.S.C. § 2000e-5(g)(1). Whereas AMWA explicitly provides for daily minimum damages of $150 for each day the retaliatory violation continues, the FLSA's retaliation remedy contains no such provision for minimum damages. Whereas Title VII explicitly requires interim earnings and amounts earnable with reasonable diligence be deducted from back pay, the AMWA contains no such requirement.

The AMWA, adopted by ballot initiative in 2006, explicitly incorporates elements of pre-existing employment statutes, for example by defining "small business" by reference to the FLSA and by adopting the FLSA's test for whether an employment relationship exists. A.R.S. § 23-362(C)-(D). The AMWA's framers therefore chose to adopt some provisions of analogous law. At the same time, they declined to require that damages be offset by interim earnings and added an unusual requirement of daily minimum damages for retaliation. This strongly suggests an intent to provide for stronger protections and deterrence against retaliation than analogous laws. *Cf. Lorillard v. Pons*, 434 U.S. 575, 584-85 (1978) (inferring congressional intent based on Congress' choice to adopt the FLSA's remedial framework rather than Title VII's).

Accordingly, the Court holds that the period of violation under A.R.S. § 23-364(G) ran from each Plaintiff's date of discharge or constructive discharge until El Rio closed down. Plaintiffs are each entitled to $150 in statutory damages for each day within that period, and no offset from interim earnings is required. Plaintiffs have correctly calculated the damages and the Court finds that the requested damages are reasonable as to each Plaintiff and adequately supported by cognizable evidence.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Default Judgment (Docs. 29, 30) is **granted**.

**IT IS FURTHER ORDERED** that Defendants shall be liable to Plaintiffs for damages as set forth below:

Plaintiff Maria Teresa Tolano

| | |
|---|---|
| Overtime Violations Under the Fair Labor Standards Act: | $6,1900 |
| Minimum Wage Violations Under the Arizona Minimum Wage Act: | $11,781 |
| Retaliation Remedy Under the Arizona Minimum Wage Act: | $34,200 |
| **Total for Plaintiff Tolano:** | **$52,171** |

Plaintiff Francisco Javier Ponce Bernal

| | |
|---|---|
| Overtime Violations Under the Fair Labor Standards Act: | $7,780 |
| Minimum Wage Violations Under the Arizona Minimum Wage Act: | $23,295 |
| Retaliation Remedy Under the Arizona Minimum Wage Act: | $20,850 |
| **Total for Plaintiff Bernal:** | **$51,925** |

Plaintiff Jose Daniel Mendoza

| | |
|---|---|
| Overtime Violations Under the Fair Labor Standards Act: | $6,976 |
| Minimum Wage Violations Under the Arizona Minimum Wage Act: | $4,680 |
| Retaliation Remedy Under the Arizona Minimum Wage Act: | $18,450 |
| **Total for Plaintiff Mendoza:** | **$30,106** |

. . . .
. . . .
. . . .
. . . .
. . . .
. . . .

<u>Plaintiff Raquel Herrera</u>

| | |
|---|---:|
| Overtime Violations Under the Fair Labor Standards Act: | $410 |
| Minimum Wage Violations Under the Arizona Minimum Wage Act: | $5,916 |
| Retaliation Remedy Under the Arizona Minimum Wage Act: | $56,550 |
| **Total for Plaintiff Herrera:** | **$62,876** |
| | |
| **Total for All Plaintiffs:** | **$197,078** |

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiffs accordingly and close this case.

Dated this 27th day of November, 2019.

_____
Honorable Rosemary Márquez
United States District Judge